UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MIAN ARIF,

Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY, *et al.,*

Defendants.

Case No. 3:26-cv-00272-MMD-CSD

ORDER

## I. SUMMARY

Plaintiff Mian Arif sued Defendant State Farm Fire and Casualty Insurance Company ("State Farm") in state court for allegedly undervaluing and underpaying his insurance claim to repair wind damage at his rental property.[1] (ECF No. 1-1 ("Amended Complaint").) Defendant removed the case based on diversity jurisdiction. (ECF No. 1.) Plaintiff now moves to remand, primarily contending that Defendant has failed to meet its burden to show the amount in controversy requirement is satisfied.[2] (ECF No. 5 ("Motion").) For reasons explained below, the Court grants the Motion and will remand the case to state court.

///

///

///

---

[1]Plaintiff first filed a complaint against State Farm General Insurance Company, which does not exist. (ECF No. 1-1 at 1 n.1.) After identifying the error, Plaintiff and Defendant agreed that Plaintiff would file an Amended Complaint correctly naming Defendant State Farm Fire and Casualty Insurance Company. (*Id.*) The allegations here are contained in the Amended Complaint.

[2]Defendant responded (ECF No. 10) and Plaintiff replied (ECF No. 15).

## II. BACKGROUND

This dispute arises from Defendant's alleged undervaluation of Plaintiff's insurance claim. Plaintiff maintained a State Farm Rental Dwelling Policy on his rental property ("Property"). (ECF Nos. 1 at 2; 1-1 at 4.) After winds damaged the Property, Plaintiff filed a claim with Defendant to replace the Property's roof. (ECF Nos. 1 at 2; 1-1 at 4.) Defendant's field representative inspected the Property, and allegedly advised Plaintiff that the insurance estimate would be lower than the actual cost to repair the damage. (ECF No. 1-1 at 4.) Defendant then estimated that it would cost $6,337.52 to repair the damage. (*Id.* at 5.) Plaintiff disputed this estimate as low and obtained quotes from contractors estimating it would cost between $37,716.56 and $62,716.56 to make repairs and replacements to the Property. (*Id.* at 5, 7.) Eventually, Defendant indicated it would only pay Plaintiff a total of $3,798.74 on the claim.[3] (*Id.* at 8.) Plaintiff asserts he is owed at least $62,716.56. (*Id.* at 10.)

Plaintiff filed the Amended Complaint in the Second Judicial District Court, Washoe County, Nevada. (ECF No. 1-1.) Plaintiff brought several claims under Nevada state law, including breach of contract, breach of implied covenant of good faith and fair dealing, and violations of Nevada's Unfair Claims Practices Act. (ECF No. 1-1 at 11-16.) Defendant removed the case on the basis of diversity jurisdiction. (ECF No. 1.)

Upon receiving Plaintiff's motion to remand, Defendant's counsel offered a stipulated remand to state court if Plaintiff agreed to state he was seeking less than $75,000 in damages. (ECF No. 10-1 at 2.) Plaintiff's counsel refused but expressed Plaintiff's willingness to "entertain an offer to settle from State Farm for $75,000." (*Id*.) Defendant contends Plaintiff's failure to stipulate and offer to settle also proves the amount in controversy has been met. (ECF No. 10 at 2.)

[3]Plaintiff alleges that Defendant made three different payments on the claim. First, following the initial inspection, Defendant paid $1,144.22 for the repairs. (ECF No. 1-1 at 6.) Second, Defendant issued an additional payment of $650.65 in December 2024 "without any explanation." (*Id.* at 7.) Third, Defendant reissued a claim check in the amount of $1,657.74 on September 5, 2024. (*Id.* at 8.) Plaintiff also alleges Defendant stated the $3,798.74 excluded the earlier $650.65 payment. (*Id.* at 8-9.)

## III. DISCUSSION

Plaintiff seeks remand, arguing that Defendant failed to meet its burden to prove the amount in controversy exceeds $75,000. (ECF No. 5 at 2.)

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See* U.S. Const. art. III, § 2, cl. 1; *see also*, *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). However, courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction *must* be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added) (citation omitted). The party seeking removal bears the burden of establishing federal jurisdiction. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006).

As noted, Defendant removed based on diversity jurisdiction. To establish subject matter jurisdiction pursuant to diversity of citizenship under § 1332(a), the party asserting jurisdiction must show: (1) complete diversity of citizenship among opposing parties and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). Here, the parties only dispute whether the amount in controversy is satisfied.[4] (ECF No. 5 at 2). "[T]he amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enter.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (citation omitted). Where it is not facially evident from the complaint that $75,000 was in controversy at the time of removal, a defendant seeking removal must prove, by a preponderance of the evidence, that the amount in controversy requirement is met. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

---

[4]The parties do not dispute diversity of citizenship. (ECF No. 5 at 2.) Plaintiff is a citizen of Nevada. (ECF No. 1. at 2.) Defendant is incorporated in Illinois and holds its principal place of business in Illinois. (*Id.*) Defendant is thus a citizen of Illinois.

Under a preponderance of the evidence standard, a removing defendant must "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional minimum. *Id.* at 1117 (citations omitted). As to the kind of evidence that may be considered, the Ninth Circuit has adopted the "practice of considering facts presented in the removal petition as well as any 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Conclusory allegations are insufficient. *Matheson*, 319 F.3d at 1090 (citation omitted).

Here, Plaintiff did not specify the amount of damages in the Amended Complaint but sought compensatory and punitive damages "in excess of $15,000," with amounts to be proven at trial (ECF No. 1-1 at 17.) Plaintiff also sought reasonable attorneys' fees. (*Id.*) Accordingly, Defendant bears a preponderance burden to show that the amount in controversy exceeds the jurisdictional minimum. *See Valdez*, 372 F.3d at 1117. Defendant removed based on the assertion that, because Plaintiff seeks $15,000 in damages on each claim as well as punitive damages, the sum of Plaintiff's alleged damages exceeds $75,000. (ECF No. 1 at 2.) Plaintiff contends that removal was improper because Defendant's calculations are speculative, particularly its punitive damages estimate. (ECF No. 5 at 2, 7.)

Defendant has not satisfied its burden. The Court addresses, in turn, each of Defendant's arguments as to how the amount in controversy is satisfied.

**A. Breach of Contract Damages**

Plaintiff alleges he is owed at least $62,716.56, or the entire estimate of his claim. (ECF No. 1-1 at 10.) Defendant asserts that, since it has already paid Plaintiff $3,798.74, the amount in controversy includes Plaintiff's "unpaid policy benefits" of $58,917.82.[5] (ECF No. 10 at 5.) The Court agrees.

---

[5]In his reply brief, Plaintiff asserts that Defendant "misreads" his Amended Complaint by treating the $62,716.56 as a floor for damages, and subtracting the

The Court's jurisdiction depends on the state of things at the time the case was filed. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004); *see also Rainero v. Archon Corp.*, 844 F.3d 832, 840 (9th Cir. 2016) (rejecting a plaintiff's attempt to fix jurisdictional issues by filing a proposed amended complaint in which he alleged the amount in controversy exceeded $75,000). Plaintiff filed his Amended Complaint on March 31, 2026. (ECF No. 1-1 at 2.) Plaintiff stated he obtained quotes from various contractors after December 2024.[6] Defendant admitted it already paid $3,798.74 on the claim.[7] (ECF No. 10 at 5.) Therefore, at the time the Complaint was filed, the unpaid benefits totaled $58,917.82. Accordingly, the breach of contract damages component of the amount in controversy is $58,917.82.

**B. Compensatory Damages**

Defendant makes two arguments that compensatory damages support meeting the amount in controversy. First, Defendant argues that Plaintiff's pleading establishes that compensatory damages[8] and attorneys' fees[9] will meet the amount in controversy.

---

amount already paid to determine the "'net unpaid policy benefits.'" (ECF No. 15 at 3.) Plaintiff further argues that, because he specifically used the word "'estimated'" in his Amended Complaint to refer to the $62,716.56 figure, Defendant cannot use this as a minimum damages calculation. (*Id.*) The Court disagrees. Though the figure is not necessarily a floor for an award of damages, Plaintiff asserts he is "owed the entire amount of his claim, estimated to be *at least* $62,716.56." (ECF No. 1-1 at 10.) (emphasis added). By stating the claim is worth "at least" $62,716.56, the Court finds it is appropriate to use this figure in calculating breach of contract damages component of the amount in controversy. (*Id.*)

[6]Plaintiff does not identify when he received these quotes. However, the order of the factual allegations in his Amended Complaint suggest that he received the quotes after Defendant issued the additional $650.56 payment on December 24, 2024. (ECF No. 1-1 at 7.)

[7]Again, Plaintiff does not identify when Defendant indicated it would only pay $3,798.74 on the claim. However, because this is alleged in the Amended Complaint, the payments were made at least by the time the Amended Complaint was filed.

[8]Defendant considers two categories of compensatory damages that justify removal. First, Defendant argues compensatory damages include Plaintiff's emotional distress damages, consequential damages related to his bad faith claim, and consequential damages from continued weather-related property damage. (ECF No. 10 at 5-6.) Additionally, the Court considers attorneys' fees alongside compensatory damages here because Defendant has organized its arguments as such,

(ECF No. 10 at 5-7.) The Court is not persuaded. These conclusory assertions are not "'summary-judgment type evidence relevant to the amount in controversy.'" *Matheson*, 319 F.3d at 1090. Defendant has not offered any evidence beyond merely asserting that, because Plaintiff has pled claims seeking compensatory damages, these amounts should be considered part of the amount in controversy. Because these allegations are conclusory, these compensatory damages cannot be included in the amount in controversy. *See Matheson*, 319 F.3d at 1090.

Second, Defendant argues that, because Plaintiff pleads three claims that each seek damages "in excess of $15,000," compensatory damages must be aggregated with the unpaid policy benefits to reach the amount in controversy.[10] (ECF No. 10 at 7.) This argument is unpersuasive.[11] Again, merely pointing out how Plaintiff is seeking damages without offering any additional evidence connecting Plaintiff's claimed

---

[9]Defendant insufficiently argues that attorneys' fees should be included in the amount in controversy because Plaintiff seeks attorneys' fees in each cause of action. However, to include attorneys' fees in the amount in controversy, a defendant must "(1) identify an applicable statute which could authorize an award of attorneys' fees and (2) provide an estimate as to the time the case will require and opposing counsel's hourly billing rate." *Henson v. Freedom Life Ins. Co. of Am.*, No. 3:21-cv-00235-LRH-CLB, 2021 WL 3216466, at *4 (D. Nev. July 29, 2021) (quotation omitted). Defendant fails on both fronts here.

[10]The second category of compensatory damages refers to each instance of Plaintiff pleading "in excess of $15,000." (ECF No. 10 at 7.) In his request for relief, Plaintiff only seeks compensatory and punitive damages "in excess of $15,000." (ECF No. 1-1 at 17.) However, Defendant is arguing the breach of contract damages ($58,917.82 in unpaid policy benefits) should be aggregated with the breach of implied covenant of good faith and fair dealing and statutory violation claims because Plaintiff specifically asserts he has suffered damages "in excess of $15,000" for each claim. (ECF No. 10 at 8.)

[11]In support, Defendant cites *Ruggieri v. Hartford Ins. Co. of the Midwest*, No. 2:13-cv-0071-GMN-GWF, 2013 WL 2896967 at *3 (D. Nev. June 12, 2013.) In the case, the court found that plaintiff's contractual damages could be aggregated with its other claims that separately authorized consequential and punitive damages to reach the amount in controversy. *Id.* at *3. The Court finds *Ruggieri's* aggregation framework does not apply here. Under the Nevada Rules of Civil Procedure, plaintiffs seeking more than $15,000 are required to plead "in excess of $15,000." *See* Nev. R. Civ. P. 8(a)(4). As Plaintiff correctly asserts, allowing a defendant to aggregate every instance of "in excess of $15,000" to reach the amount in controversy would "convert compliance with a Nevada procedural rule into a mechanism for manufacturing federal jurisdiction." (ECF No. 15 at 4.)

damages to the amount in controversy is not sufficient to meet Defendant's burden. Therefore, the Court finds Defendant has not met its burden to demonstrate that compensatory damages support meeting the amount in controversy requirement.

**C. Punitive Damages**

Next, Defendant asserts that punitive damages "independently" support meeting the amount in controversy requirement. (ECF No. 10 at 8.) Defendant argues that Nevada courts have routinely upheld large punitive damages awards in insurance bad faith cases. (*Id.*) Plaintiff counters that Defendant has failed to identify factually analogous cases that support Defendant's punitive damages estimate. (ECF No. 15 at 5.) The Court agrees with Plaintiff.

To establish punitive damages in support of the amount in controversy, a defendant may introduce evidence of jury verdicts in cases involving "similar facts." *Flores v. Standard Ins. Co.*, No. 3:09-cv-00501-LRH-RAM, 2010 WL 185949, at *5 (D. Nev. Jan. 15, 2010.) Here, Defendant fails to introduce any factually analogous cases. For example, Defendant relies on *Tracey v. Am. Family Mut. Ins. Co.*, No 2:09-cv-01257-GMN-PAL, 2010 WL 3613875 (D. Nev. Sept. 8, 2010) as the "closest factual analogue." (ECF No. 10 at 11.) *Tracey*, however, involved a bad faith insurance claim stemming from the defendant's refusal to pay plaintiff's uninsured motorist coverage claim. *Tracey*, 2010 WL 3613875 at *1. This case concerns an insurance dispute resulting from Defendant's refusal to pay Plaintiff's rental insurance policy claim. (ECF No. 1 at 2.) Because Defendant has failed to provide factually analogous cases, it has failed to prove punitive damages[12] alone will meet the amount in controversy requirement.

---

[12]Defendant also incorrectly argues that the amount in controversy is met because Nevada law allows for uncapped punitive damages in insurance bad faith cases. (ECF No. 10 at 9.) Though it is true NRS § 42.005's statutory cap on punitive damages does not apply to insurance bad faith cases, the mere fact that the statute exists is not sufficient to prove the amount in controversy. *See Smith v. State Farm Mut. Auto. Ins. Co.*, No. 2:21-cr-1471-JCM-VCF, 2021 WL 5050358 at *4 (D. Nev. Nov. 1, 2021) (finding State Farm's "argument that punitive damages are a forgone conclusion [was] insufficient to show a likely monetary amount of punitive damages").

**D. Settlement Email**

Lastly, Defendant argues that the email exchange ("Settlement Email") between its counsel and Plaintiff's counsel "independently support[s]" meeting the amount in controversy. (ECF No. 10 at 12.) Defendant first asserts that Plaintiff's refusal to stipulate that he is not seeking more than $75,000 in damages confirms that the amount in controversy has been met. (*Id.*) However, "[a] plaintiff's refusal to stipulate to cap damages at $75,000 is not sufficient to establish removal jurisdiction." *Soriano v. USAA Ins. Agency, Inc.*, No. 3:09-cv-0661-RCJ-RAM, 2010 WL 2609045 at *2 (D. Nev. June 24, 2010). Here, Plaintiff's counsel rejected Defendant's offer of a stipulated remand and explicitly stated Plaintiff would not accept a conditional removal "capping [Plaintiff's] recovery." (ECF No. 10-1 at 2.) In seeking removal, a defendant bears the burden of establishing the amount in controversy by a preponderance of the evidence, and "a [p]laintiff's refusal to stipulate to a damages cap does not alter [this] burden." *Soriano*, 2010 WL 260945 at *2. Therefore, Plaintiff's refusal to stipulate alone does not support meeting the amount in controversy.

Defendant also argues that Plaintiff's offer to settle the case for $75,000 affirms he values the case at $75,000, in satisfaction of the jurisdictional amount. (ECF No. 10 at 13-14.) Plaintiff counters that the email response was not a settlement demand "asserting a case value," but a statement made in the context of settlement negotiation. (ECF No. 15 at 8.) The Court agrees. A settlement letter can be used to establish the amount in controversy "if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002). Here, however, the Court agrees with Plaintiff that his offer to consider a settlement was not an affirmation of how much he values the case, but rather an expression of willingness to engage in settlement negotiations. (ECF No. 15 at 8.) As such, the Settlement Email was not a settlement letter. Moreover, Defendant has failed to offer any evidence showing that Plaintiff believes $75,000 is a "reasonable estimate" of the value of his case. *Cohn*, 281

F.3d at 840. Therefore, the Court finds that the Settlement Email cannot be used to calculate the amount in controversy.

**E. Request for Attorneys' Fees**

Plaintiff includes in his Motion a request for attorneys' fees. In remanding a case, under 28 U.S.C. § 1447(c), a court can require the payment of any "just costs" and "actual expenses" incurred as a result of removal. 28 U.S.C. § 1447(c). A court may award attorneys' fees under § 1447(c) only when a removing party "lack[s] an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Here, the Court finds that Defendant did not lack any objectively reasonable basis for removal. Moreover, Plaintiff has failed to identify how Defendant's petition for removal lacked an "objectively reasonable basis." *Martin*, 546 U.S. at 141. Therefore, the Court denies Plaintiff's request for reasonable attorneys' fees incurred in moving to remand the case.

In sum, Defendant has not met its burden to show by a preponderance of the evidence that the sum of Plaintiff's alleged damages will satisfy the amount in controversy requirement. Because "[f]ederal jurisdiction *must* be rejected if there is any doubt as to the right of removal in the first instance," the Court finds it does not have diversity jurisdiction and will remand the case. *Gaus*, 980 F.2d at 566 (emphasis added).

**IV. CONCLUSION**

The Court notes that Plaintiff and Defendant made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiffs' motion to remand (ECF No. 5) is granted. The Court denies Plaintiff's request for attorneys' fees.

It is further ordered that this action is remanded to the Second Judicial District Court in Washoe County, Nevada.

It is further ordered that the Clerk of Court kindly close this case.

DATED THIS 9th Day of October 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE